UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORA McWHITE,

    Plaintiff,

vs.                                                                     CASE NO.:

CONGRESSIONAL BANK CORP.,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Cora McWhite, by and through her undersigned counsel, sues the Defendant, Congressional Bank Corp., and states as follows:

## JURISDICTION AND VENUE

1. Plaintiff invokes this Court's jurisdiction in accordance with 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this Judicial District.

## PARTIES

3. At all times material herein, Plaintiff, CORA McWHITE, (hereinafter "McWhite" or "Plaintiff") was and is a resident of Hillsborough County, Florida.

4. At all times material herein, Defendant, CONGRESSIONAL BANK CORP. (hereinafter "Congressional" or "Defendant"), was and is a foreign for-profit corporation,

authorized to and doing business in Hillsborough County, Florida.

5. Defendant is an "employer," as defined by the laws under which this action is brought and employs more than ten (10) employees.

**FACTUAL ALLEGATIONS**

6. Plaintiff began her employment with the Defendant in or around February 4, 2019 as a Loan Processor. Defendant agreed to pay Plaintiff an initial salary of $52,000 per year ($2,166.67 semi-monthly), plus benefits.

7. As part of her job duties, Plaintiff reviewed the detail and quality of loan applications submitted by Defendant's sales representatives and reviewed the loan structures to ensure that each met the lender's requirements.

8. Plaintiff directly reported to the Processing Supervisor, Ms. Kay Devlynne, who worked in Columbus, Ohio. Plaintiff did not report directly to anyone in the Tampa office where she worked. All of the Loan Processors reported to Ms. Devlynne, and some worked in Columbus, Ohio while others worked remotely.

9. Early in her time with Defendant, Plaintiff identified some lending procedures and practices that raised compliance concerns. For example, Plaintiff learned that Defendant's sales staff and underwriters were altering applications prepared by borrowers after those borrowers had electronically signed the applications, in violation of Federal Housing Association ("FHA") and department of Veterans' Affairs ("VA") lending rules.

10. Plaintiff raised her concerns about these compliance issues with her manager Ms. Devlynne. Ms. Devlynne, in turn, shared Plaintiff's concerns with Defendant's Vice President of Mortgage Compliance, Ms. Saundra Bolden.

2

11. That same month, Congressional named Mr. Ken Ingram as the local manager for the Tampa branch. Ms. Bolden travelled to the Tampa branch to meet with staff members to discuss the change in local management.

12. On her visit to the Tampa branch, Ms. Bolden met with Plaintiff to discuss compliance issues and asked Plaintiff to identify which members of the sales staff had altered documents, suggesting that she would confer with them to ensure compliance going forward.

13. But following the change in management at the Tampa office, the compliance issues in the mortgage loan department continued. For example, Plaintiff learned that Defendant's loan sales staff was preparing Letters of Explanation necessary for the underwriting team without consulting the borrower.

14. Plaintiff shared the concerns about this issue with her manager Ms. Devlynne, who again said she would address the issue with Ms. Bolden. In early April 2019, Ms. Bolden visited the Tampa branch and told Plaintiff she would discuss these compliance issues with Congressional's CFO, Mr. Joe Grinder.

15. Plaintiff, however, began to feel that her efforts to address these compliance problems were creating issues in her relationships with Congressional colleagues, including Mr. Ingram, and Defendant's Underwriting Team Lead Ms. Rebecca Benner.

16. During this time, Congressional was pushing to "meet the numbers" and Plaintiff felt that despite her high level of production she was viewed as a potential hinderance to the goal of closing FHA and VA loans to maximize profits.

17. Nevertheless, while Plaintiff worked at Congressional, she always exceeded the expectations of Ms. Devlynne, her direct supervisor. And Ms. Devlynne shared Plaintiff's

concerns about the regulatory issues that Plaintiff raised. Ms. Devlynne was also concerned about efforts to retaliate against Plaintiff for raising these issues.

18. Ms. Devlynne also had concerns that Plaintiff, an African American, was discriminated against because of her race while at Congressional. Indeed, Ms. Devlynne heard a number of discriminatory comments about Plaintiff, including that she "didn't know her place" and that she was "uppity."

19. The individuals making these comments also falsely stated that Plaintiff had a poor work ethic and that she was "not a good fit" for Congressional.

20. Ms. Devlynne ultimately complained to Congressional's Human Resource Department asserting that individuals were discriminating against Plaintiff because of her race.

21. On May 20, 2019, shortly after Ms. Devlynne made that complaint, Plaintiff joined a conference call led by Mr. Grinder and the operations team. On that call, Plaintiff was told that Congressional was winding down its loan business and that the Loan Processors should work only on their existing pipeline for the next 30 to 60 days.

22. That same day, however, Congressional terminated Plaintiff's employment immediately. Congressional did not immediately terminate any of the other Loan Processors.

23. Following Plaintiff's termination, a human resource officer from Congressional called and apologized that Congressional had laid Plaintiff off immediately rather than giving her the chance to continue working to close the loans in her pipeline. That human resource representative asked Plaintiff whether she felt that she had been discriminated against because of her race. Plaintiff said that she did, but Congressional did not ask Plaintiff to return to work.

24. After terminating Plaintiff's employment, Defendant failed and refused to pay

Plaintiff all amounts due under the terms of her employment.

## COUNT I
## RACE DISCRIMINATION – 42 U.S.C. §§ 1981, 1983

25. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 24.

26. Plaintiff is a member of a protected class under 42 U.S.C. §§ 1981, 1983.

27. By reason of the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her race.

28. Defendant's unlawful and discriminatory employment practices towards Plaintiff were intentional.

29. Because of Defendant's unlawful employment practices. Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for all damages and relief available under federal law including compensation for lost wages, benefits, and other renumeration; interest; emotional pain and suffering, humiliation, and any other compensatory damages legally permitted; reinstatement, attorneys' fees, costs, expenses, and all other relief that this Court deems just and proper.

## COUNT II
## FALSE CLAIMS ACT WHISTLEBLOWER

30. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 24.

31. Plaintiff took many lawful actions to prevent Defendants from submitting false claims to the United States. Specifically, on several occasions Plaintiff objected to Defendant's

violations of FHA and VA lending requirements that would have resulted in the submission of false claims.

32. Knowing of Plaintiff's complaints about these improper lending practices to federal loan programs, Defendant took retaliatory actions and terminated Plaintiff's employment.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for all damages and relief available under the federal law including 2 times back pay, interest, reinstatement, attorneys' fees, costs, expenses, and all other relief that this Court deems just and proper.

**COUNT III**
**FLORIDA'S PRIVATE WHISTLEBLOWER ACT**

33. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 24.

34. This is an action for damages pursuant to Florida's Private Whistleblower's Act, Section 448.102, *Florida Statutes*.

35. Pursuant to Section 448.102, *Florida Statutes,* an employer may not take any retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

36. In contravention of said statute, and in direct retaliation for objecting to and/or refusing to participate in a policy, practice or activity that was a violation of a law, rule or regulation, Defendant constructively discharged Plaintiff; refused to allow Plaintiff to work through her notice period; and failed to pay Plaintiff all wages owed under the terms of her

employment.

37. Because of Defendant's unlawful acts as above-described, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for all damages and relief available under Florida law including compensation for lost wages, benefits, and other renumeration; interest; emotional pain and suffering, humiliation, and any other compensatory damages legally permitted; reinstatement, attorneys' fees, costs, expenses, and all other relief that this Court deems just and proper.

## COUNT IV
## UNPAID WAGES

38. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 24.

39. Plaintiff earned wages over the course of her employment which remain unpaid by Defendant. Specifically, Defendant failed to reimburse Plaintiff for certain hours worked at the end of her employment and for accrued paid time off.

40. Plaintiff has earned unpaid wages which are owed and payable by the Defendant employer pursuant to Florida Statute Chapter 448.08.

41. Defendant, despite Plaintiff's reasonable attempts to obtain payment of these earned monies, has failed and refused to make payment as required by Florida Statute Ch. 448.08.

WHEREFORE, Plaintiff demands judgment against the Defendant for all damages and relief under the Florida law including compensatory damages, interest, attorneys' fees, costs, expenses, and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

42. Plaintiff requests a jury trial on all issues so triable.

**DATED** February 20, 2020.

**FLORIN, GRAY, BOUZAS, OWENS, LLC**

*/s/ Scott L. Terry*

**SCOTT L. TERRY**
Florida Bar No.: 77105
Primary: sterry@fgbolaw.com
Secondary: debbie@fgbolaw.com
**WOLFGANG M. FLORIN**
Florida Bar No. 907804
Primary: wolfgang@fgbolaw.com
Secondary: tina@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 254-5255
Facsimile (727) 483-7942
Attorneys for Plaintiff